In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **ANDREW N. GORMAN**, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| *vs.* | )   **CAUSE NO. 1:07-cv-1002-SEB-WGH** |
| | ) |
| **HUGH T. GORMAN** and **LYNN** | ) |
| **GORMAN**, | ) |
| | ) |
| Appellees. | ) |

[*In re*:  Andrew Neil Gorman, Debtor.       )   Bankruptcy Cause No. 07-00760-FJO-7]

**E N T R Y**

     This cause before us is an appeal from a June 25, 2007, Order of the Bankruptcy Court denying Appellant's motion to avoid a judgment lien held by Appellees.  (Bkrtcy. doc. 36).  For the following reasons, the Order is reversed and this matter is remanded with instructions for further proceedings.  Appellant's Emergency Motion to Stay (doc. 13) is denied as moot.

     Appellant Andrew N. Gorman ("Andrew") filed a Chapter 7 voluntary bankruptcy petition on February 3, 2007.  On the petition's Schedule A, Real Property, he listed a three-bedroom home on 2.5 acres in Monroe County, Indiana, that was appraised at $34,000 as of January 10, 2007.[1]  On Schedule D, Creditors Holding Secured Claims, he listed a judgment lien on the property held by Appellees Hugh T. Gorman and Lynn Gorman ("Hugh and Lynn") in the

_____

     [1] The property was inherited, and is currently owned, by both Andrew and his cousin.

amount of $30,000.  Andrew is Hugh and Lynn's grand nephew and their next-door neighbor.  In the Bankruptcy Court, Andrew moved to avoid Hugh and Lynn's judgment lien in its entirety pursuant to 11 U.S.C. § 522(f)(1), which entitles a debtor to avoid judicial liens that impair an exemption.  Andrew claims that the $30,000 lien on his $34,000 property impairs either his residential exemption of $15,000 or non-residential exemption of $4,800.  (There was, and apparently still is, a dispute regarding whether Andrew resides at the property).  There are no other liens or other encumbrances on the property.  After two hearings, the Bankruptcy Court denied Andrew's motion for the reason that Andrew retains equity in the property in excess of the lien amount.  The Bankruptcy Court's Order reads:  "The judicial lien shall remain on the property until said time [*sic*] the property is sold; at which time the Debtor is entitled to claim his rightful exemption and then the monies shall be paid to the Gormans to the extent necessary to satisfy their lien, with the balance, if any, being paid to the appropriate parties of interest."  (Bkrtcy. doc. 36).  Andrew then filed this appeal.

We review the Bankruptcy Court's legal conclusions *de novo*.  *Phoenix Bond & Indemnity Co. v. MCM Enterprises, Inc.*, 319 B.R. 157, 160-61 (S. D. Ind. 2005).  There is no dispute about the relevant facts.

Upset at the poor condition of Andrew's property, Hugh and Lynn attempted to sell their neighboring lot but were unsuccessful in the face of the increased deterioration of Andrew's property and harassment of agents and potential buyers who viewed Hugh and Lynn's property.[2]

---

[2] At the hearings before the Bankruptcy Court, Hugh testified that trash and debris were placed along his and Andrew's common driveway and that visiting agents and clients were verbally harassed as they viewed Hugh and Lynn's property.  Evidence was submitted that

Hugh and Lynn then filed a civil nuisance suit in state court against Andrew, his cousin, and other family members in 2003 and, in September 2004, they were awarded a $30,000 judgment, accruing statutory interest at 8 percent per annum, and a lien against Andrew's property. Hugh and Lynn filed a praecipe for writ of execution in August 2006 but the writ was stayed on February 28, 2007[3] after Andrew notified the court of his February 3, 2007, filing for federal bankruptcy protection. His motion to avoid Hugh and Lynn's judicial lien was filed at the same time as his petition.

On March 7, 2007, after Andrew's avoidance motion was fully briefed but before it was heard or decided, the bankruptcy trustee filed his report concluding that there were no assets of Andrew's estate to administer and that he received no property or funds of the estate. (Bkrtcy. doc. 20). On April 7, 2007, the Bankruptcy Court ordered the property of the estate abandoned and granted "secured creditors with unavoidable, perfected security interests in any such property" limited relief from the automatic stay "to pursue their valid claims against such property in accordance with applicable law . . . ." (Bkrtcy. doc. 26). Hearings on Andrew's motion to avoid lien were held on April 23, 2007 and June 11, 2007, and the Bankruptcy Court denied his motion on June 25, 2007. (Bkrtcy. doc. 28, 35, 36, 45, and 46). His appeal of that decision was filed in this Court on August 2, 2007 and became fully-briefed on October 10, 2007.

---

Andrew and/or other family members told real-estate agents that their actions were intended to scare off potential buyers of Hugh and Lynn's property.

[3] The writ was originally stayed on February 8, 2007, but that order was vacated and a new stay was entered on February 28, 2007.

On May 16, 2008, Andrew moved the Bankruptcy Court to stay the proceedings, particularly the sale of his property by the Monroe County Sheriff, pending resolution of this appeal. (Bkrtcy. doc. 51). Apparently, the Monroe Circuit Court had lifted its stay of execution in Hugh and Lynn's nuisance suit after the Bankruptcy Court issued its Order abandoning estate property and lifting the automatic stay for secured creditors to pursue their claims. On June 19, 2008, following a hearing, the Bankruptcy Court granted Andrew's motion for a stay of the Sheriff's sale conditioned on his posting a $20,000 surety bond within ten days of the Order in order to indemnify Hugh and Lynn. (Bkrtcy. doc. 56). If bond was not posted within that time period, the Sheriff of Monroe County was authorized to sell the property and distribute the proceeds pursuant to further order of the Bankruptcy Court and the Monroe Circuit Court, and the Monroe Circuit Court was permitted, in its discretion, to add the Sheriff's sale fees of $200 and attorney's fees of $740 incurred by Hugh and Lynn to the state-court judgment payable by Andrew to Hugh and Lynn. (*Id.*). Andrew did not post a bond.

On June 23, 2008, the Sheriff of Monroe County filed notice in the Monroe Circuit Court that, pursuant to that court's decree, he will expose Andrew's property at public sale on August 15, 2008, in order to satisfy the court's judgment in favor of Hugh and Lynn. (Doc. 15, Attachment). On July 8, 2008, Andrew filed in this Court an emergency motion to stay the Bankruptcy Court's authorization of a Sheriff's sale pending resolution of this appeal. (Doc. 13; clarification, doc. 16). In his motion, he argues that he cannot post a $20,000 bond, as previously required by the Bankruptcy Court, because he is bankrupt; he has been unsuccessful in raising the necessary funds; he will suffer irreparable harm if the property is sold and the funds distributed but he then prevails on his appeal; the Sheriff's public-sale date is not a unique

opportunity for Hugh and Lynn but can be postponed until after this appeal is resolved; and

Hugh and Lynn's judgment is protected in the meantime by their existing lien.

## Discussion

Title 11 U.S.C. § 522(f)(1) authorizes avoidance of certain types of liens:[4]

> **(f)(1)** . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is —
> **(A)** a judicial lien, other than a judicial lien that secures a [domestic support obligation debt] . . . .

Title 11 U.S.C. § 522(f)(2)(A) provides the formula for determining when a lien "impairs an

exemption":

> **(f)(2)(A)** For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of —
> **(i)** the lien;
> **(ii)** all other liens on the property; and
> **(iii)** the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(1) and (f)(2).  There is no dispute in this case that Hugh and Lynn's $30,000

judgment lien resulting from their nuisance suit against Andrew qualifies as a lien that may be

avoided under § 522(f)(1).

Andrew seeks to avoid Hugh and Lynn's lien in its entirety.  Although they argue that the

Bankruptcy Court  properly denied Andrew's motion, Hugh and Lynn in effect concede that §

---

[4] In Title 11 of the United States Code, "[t]he term 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."  11 U.S.C. § 101(36).

522(f)(1) provides for partial avoidance in this case.  (Appellees' Brief (doc. 9), p. 6-7).  The

Bankruptcy Court, however, did not reach the question of whether § 522(f) authorizes entire or

partial avoidance of the lien; instead, it denied Andrew's motion because it found that Hugh and

Lynn's lien does not impair either of Andrew's claimed exemptions.  The Court's Order reads in

full:

> This matter comes before the Court upon the filing of the Amended
> Motion to Avoid Lien by the Debtor and the Objection filed thereto by the
> Gormans.  The Court held a hearing on this matter on June 11, 2007.
>
> The Debtor requests the Court to avoid the lien of Hugh and Lynn Gorman
> pursuant to 11 U.S.C. section 522(f).  The Debtor asserts that there is a judicial
> lien by the Gormans on the property for $30,000; that the impaired exemption is
> $15,000 under IC 34-55-10-2(c)(1) or $4,800.00 under IC 34-55-10-2(c)(2); and
> that the value of the property is $34,000.00.  The Bankruptcy Code, section 522,
> provides that a debtor may avoid a lien to the extent that it impairs his exemption.
> In re Owen 70 B.R. 366 (Bkrtcy. N.D. [Ind.] 1987).  Indiana has opted out of the
> federal exemptions and has adopted its own exemptions which can be found at I.
> C. 34-55-10-2.
>
> Other than the Gorman's [*sic*] judicial lien, there are no other
> encumbrances against the property.  *Therefore, there is clearly equity in the
> property.  The judicial lien may not be avoided because it does not impair the
> Debtor's exemption*.  The judicial lien shall remain on the property until said time
> [*sic*] the property is sold; at which time the Debtor is entitled to claim his rightful
> exemption and then the monies shall be paid to the Gormans to the extent
> necessary to satisfy their lien, with the balance, if any, being paid to the
> appropriate parties of interest.
>
> It is, therefore,
>
> ORDERED, ADJUDGED and DECREED that the Amended Motion to
> Avoid Lien be and hereby is DENIED.

(Bkrtcy. doc. 36 (emphasis added)).

Rather than applying § 522(f)(2)(A)'s formula for determining whether Hugh and Lynn's

lien impairs Andrew's exemption, the Bankruptcy Court appears to have concluded that an

6

exemption is impaired only when there is *no* equity existing in the property.  But §

522(f)(2)(A)'s formula also finds impairment when there is *insufficient* equity in a property.  The

failure to apply the statutory definition of impairment was erroneous.  Moreover, neither Andrew

nor Hugh and Lynn contended below, or contends now on appeal, that Hugh and Lynn's lien

does not impair either of Andrew's alternate exemptions.  Straightforward application of §

522(f)(2)(A)'s formula demonstrates that they are impaired:  Hugh and Lynn's judgment lien of

$30,000 plus either the residential exemption of $15,000 or the non-residential exemption of

$4,800 totals $45,000 or $34,800 respectively, both of which exceed the $34,000 appraised value

of Andrew's interest in the property in the absence of the lien.  In other words, there is

insufficient value or equity in Andrew's property to satisfy both the judgment lien and Andrew's

exemption.  The exemption is thus impaired under the statutory definition.

The gravamen of the dispute between the parties is not over the existence of impairment,

but whether, as a result of the impairment, §522(f)(1) will avoid Hugh and Lynn's lien in its

entirety or only in part.  Andrew argues that the lien should be completely avoided if his

exemption is impaired at all while Hugh and Lynn argue that the lien should be avoided only in

part, up to the amount of the impairment.

Andrew's rationale is not based on the text of § 522(f), but on policy and legislative

history.  He contends that the Bankruptcy Court's denial of complete avoidance is erroneous

because it deprives him of appreciation in the value of his property occurring after he filed his

bankruptcy petition; allowing debtors, not lien holders, to reap such appreciation, he argues,

furthers the broad policy of affording debtors a "fresh start" after bankruptcy.  But §§ 522(f)(1)

and (f)(2) nowhere mention post-petition appreciation in liened property, either in determining whether an exemption is impaired or in determining the amount of the lien to avoid.  Andrew's argument for complete avoidance ultimately is founded on a particular statement in the legislative history of the 1994 amendments to § 522 which added subsection (f)(2)(A)'s formula defining when "a lien shall be considered to impair an exemption."  He first asserts that the Bankruptcy Court's decision in this case is identical to the decision in *In re Chabot*, 992 F.2d 891 (9th Cir. 1993).  Next, he contends that, in enacting § 522(f)(2)(A), Congress specifically overruled the Ninth Circuit's decision in *Chabot* in favor of the approach of *In re Brantz*, 106 B.R. 62 (Bankr. E.D. Pa. 1989).  Thus, because the decision below is identical to *Chabot*, its result is likewise rejected by § 522(f)(2)(A).  Andrew's argument is flawed in several respects.

First, this case is not identical to *Chabot* in the relevant respects.  In *Chabot*, the debtor asked that a judicial lien be avoided in its entirety in order to permit him to enjoy the benefits of any post-petition appreciation in his property.  The Court of Appeals for the Ninth Circuit rejected the debtor's argument on the grounds that, first, the plain meaning of the statute provides for protection of only the statutory amount of an exemption, regardless of post-petition appreciation — or depreciation — in the value of the subject property, and, second, enjoyment of post-petition appreciation is not necessary to allow debtors  a "fresh start" following bankruptcy.  Except in the respects that both decisions denied any lien avoidance and that neither mentioned the question of partial *versus* complete avoidance, *Chabot* is not similar to our case.  First, the Bankruptcy Court's Order in this case made no mention of the subject of post-petition appreciation or the "fresh start" policy.  Second, while *Chabot*, like the Bankruptcy Court here, found no impairment of the debtor's exemption, it did so based on a calculation that was

consistent with § 522(f)(2)(A).[5]  The subject property in *Chabot* had a value of $400,000; there were prior encumbrances of $124,953.30; the debtor claimed a homestead exemption of $45,000; and the judicial lien sought to be avoided totaled $241,579.08.  Applying § 522(f)(2)(A)'s formula would ordinarily indicate that the debtor's exemption was impaired:  judicial lien of $241,579.08, plus prior liens of $124,953.30, plus exemption of $45,000, totals $411,532.38, which exceeds the $400,000 value of the property by $11,532.38.  However, in *Chabot*, the unique wrinkle was that the governing state law specifically provided that judgment liens attached only to any surplus over the total of prior liens and encumbrances *and* the debtor's claimed homestead exemption.  *Chabot*, 992 F.2d at 893-94.  In effect, state lien law automatically reduced the judicial lien by $11,532.38 to accommodate the value of the property, prior liens, and the claimed homestead exemption.  Thus statutorily-defined to protect the debtor's exemption, the judgment lien sought to be avoided could not have impaired the exemption and, therefore, could not have provided a basis under § 522(f) for an avoidance of the lien, partially or entirely.

The debtor's argument in *Chabot* was that the value of the exemption to which he was entitled should not be limited to the statutorily-defined amount but, in accordance with the "fresh start" policy, should be redefined to include any post-petition appreciation in his property; therefore, whether his exemption was "impaired" under § 522(f)(1) should be similarly broadly-defined to account for post-petition appreciation.  As mentioned, the Ninth Circuit rejected that argument on statutory-interpretation and policy grounds; but, it did not address whether §

---

[5] *Chabot* was decided before the 1994 amendments that added § 522(f)(2)(A).

522(f)(1) allows for partial avoidance when an exemption is only partially impaired.  In our case, the Bankruptcy Court's determination of whether Hugh and Lynn's lien impaired Andrew's exemption was not consistent with § 522(f)(2)(A) and was incorrect.  Unlike *Chabot*, our case presents impairment of the debtor's exemption.

Second, while the legislative history of § 522(f)(2)(A) includes a brief statement rejecting *Chabot*, Andrew infers too much from that rejection and, moreover, the statement misreads *Chabot*.  The House Report explains that the enactment of § 522(f)(2)(A)'s formula defining when an exemption is impaired was intended to overrule various court decisions involving three lien-avoidance scenarios.  The second scenario involves a house worth $50,000; a first mortgage of $40,000; a homestead exemption of $10,000; and a judicial lien of $20,000.  The report notes that, while most courts and commentators would conclude that the judicial lien should be avoided in its entirety, a few courts, including *Chabot*, held that only $10,000 of the judicial lien could be avoided.  The Report states that such a result is improper because, first, the debtor could be threatened with post-bankruptcy execution by the judgment creditor on the debtor's $10,000 interest in the property which, at the time of the bankruptcy, qualifies under the homestead exemption and, second, that execution on any increase in the debtor's equity above the exemption amount, which is attributable to the debtor's post-bankruptcy mortgage payments (thus reducing the first mortgagee's lien and increasing the debtor's equity), would violate the "fresh start" policy.  H. R. Rep. 103-835, 103rd Cong., 2d Sess., p. 53, *reprinted in*, 1994 U. S. Code Cong. & Admin. News, p. 3362.

Although Andrew contends that the overruling of *Chabot* by § 522(f)(2)(A) has been

"universally recognized," (Appellant's Brief (doc. 3), p. 4), there are, in fact, more persuasive decisions, epitomized by *In re Silveira*, 141 F.3d 34 (1st Cir. 1998), that have found the legislative history unreliable.  Not only did the House Report misread the facts and holding of *Chabot*, but its own model for § 522(f)(2)(A)'s formula, *In re Brantz*, 106 B.R. 62 (Bankr. E.D. Pa. 1989), is consistent with *Chabot*.  The House Report judged *Chabot*'s decision against a scenario in which there was no equity in the debtor's property beyond an unavoidable mortgage lien and the debtor's exemption, whereas *Chabot*'s facts included such a surplus debtor's equity. In addition, the House Report criticized *Chabot* for avoiding the judicial lien only in part, which threatened the debtor's exemption, when, in fact, as explained above, *Chabot* denied all avoidance because it found that there was no impairment of the debtor's exemption — the partial reduction in the judicial lien in that case was effected by state law which permitted judicial liens to attach only to surplus equity, if any, above prior liens and the debtor's exemption — and the debtor's exemption was fully protected, not threatened, in *Chabot*.  Relying  solely on this brief, flawed reference to *Chabot* in the legislative history, without engaging its assumptions and rationale, and with no argument based the text of the statute itself, Andrew's argument for complete avoidance is unpersuasive.

Even as it stands, Andrew infers far too much from the legislative history.  The House Report states that § 522(f)(2)(A)'s test for impairment is based on the formula applied in *Brantz*, which it describes as favorably cited by the Supreme Court in *Owen v. Owen*, 500 U.S. 305, 313 n. 5, 111 S.Ct. 1833, 1838 n. 5, 114 L.Ed.2d 350 (1991).  *Brantz*, however, involved a surplus-equity scenario — as did *Chabot* but which the Report's three scenarios do not — but, because the surplus was insufficient to completely cover the judicial lien sought to be avoided — as in

*Chabot* — the *Brantz* court partially avoided the judicial lien up to the amount that the debtor's exemption was impaired.  There is no inconsistency among the tests for impairment in *Brantz*, *Chabot*, and § 522(f)(2)(A).  The clear lesson of the House Report's explicit endorsement of *Brantz*, moreover, is that § 522(f)(2)(A) provides for partial, not complete, avoidance of judicial liens when there exists debtor's equity in property above non-avoidable liens and claimed exemptions.  In context, this endorsement of *Brantz* by the House Report should have carried more weight with Andrew than its rejection of *Chabot*.  At any rate, the House Report nowhere endorses or mentions complete avoidance in surplus-equity contexts and none of its three scenarios involves surplus debtor equity.  In its pseudo-*Chabot* second scenario, the Report does mention the issue of increases in debtors' equity corresponding to decreases in mortgagees' lien interests as a result of post-bankruptcy payments by debtors, but only in the context where there was no surplus debtor equity at the time of complete avoidance of a judicial lien and only for the purpose of illustrating how partial avoidance in that context threatens debtors' exemptions and their "fresh start."  Such a passing reference provides no support for interpreting § 522(f)(2)(A) to allow complete avoidance in order to grant anticipated post-petition appreciation in the value of property to the debtor.

Based on the flawed legislative history, or a desire to give effect to a broad understanding of the "fresh start" policy, there is a line of mostly district and bankruptcy decisions that interpret § 522(f) to allow avoidance of judicial liens in their entirety, if they are not completely covered by a debtor's surplus equity above unavoidable liens and exemptions.  We find more persuasive, however, the decisions that adhere to the plain meaning of the statutory text and hold that § 522(f) allows only partial avoidance in that circumstance.  *See*, *e.g.*, *In re Brinley*, 403 F.3d 415

(6th Cir. 2005); *In re Kolich*, 328 F.3d 406 (8th Cir. 2003); *In re Hanger*, 196 F.3d 1292 (9th

Cir. 1999) (adopting Bankruptcy Appellate Panel's decision, 217 B.R. 592 (9th Cir. BAP 1997));

*In re Holland*, 151 F.3d 547 (6th Cir. 1998); *In re Silveira*, 141 F.3d 34 (1st Cir. 1998); *In re

Falvo*, 227 B.R. 662 (6th Cir. BAP 1998); *In re Darden*, Nos. 8:07CV10 and 02-80078,

Memorandum and Order, 2007 WL 1434898 (D. Neb., May 14, 2007); *In re Varallo*, No. 05-

42100, Decision on Motion to Avoid Liens, 2006 WL 2433469 (N.D. Ind., Aug. 21, 2006); *In re

Vokac*, 273 B.R. 553 (Bkrtcy. N.D. Ill. 2002); *In re Sheth*, 225 B.R. 913 (Bkrtcy. N.D. Ill.

1998).[6]

The statute's text is plain and unambiguous as we read it.  Section 522(f) provides that a

debtor may avoid the fixing of a lien on his interest in property "*to the extent that* such lien

impairs an exemption" to which he would be entitled.  11 U.S.C. § 522(f)(1) (emphasis added).

The phrase "to the extent that" is not mere surplusage and is not ambiguous; it has a distinct

effect on the subsection's authorization of avoidance of liens:  it limits avoidance of a judicial

lien to the amount that an exemption is impaired, no more and no less.  Confirming and

reiterating this limitation, Congress included it in the 1994 addition of § 522(f)(2)(A)'s

definition of exemption impairment:  "a lien shall be considered to impair an exemption *to the

extent that* the sum of [the three components quoted above] exceeds the value that the debtor's

interest in the property would have in the absence of any liens."  11 U.S.C. § 522(f)(2)(A)

(emphasis added).  There is no support in the statutory text for avoiding a lien in its entirety

when there exists excess debtor equity in property above other liens and exemptions.  Therefore,

---

[6] The parties did not cite controlling authority from the Court of Appeals for the Seventh
Circuit and we found none ourselves.

because the plain meaning of the statutory text is clear and unambiguous, any suggestion of a contrary meaning in the legislative history is ineffective.

In this case, because the latest proven appraised value of the property is $34,000, Hugh and Lynn's judgment lien is $30,000, and Andrew's exemption is either $15,000 or $4,800, application of § 522(f)(2)(A) results in an impairment of Andrew's exemption to the extent of either $11,000 or $800.  Therefore, under § 522(f)(1), Andrew may partially avoid Hugh and Lynn's lien to the extent of either $11,000 or $800, based on the January 2007 appraisal. Because the Bankruptcy Court's Order denied Andrew's motion for avoidance, it must be reversed with instruction to grant partial avoidance.

In addition, the Bankruptcy Court should make a finding regarding which of the two exemptions — residential or non-residential — Andrew is entitled to.  In addition, because sale of the property is scheduled within a month; the latest appraisal of the property was completed in January, 2007; and the record before the Bankruptcy Court indicates that the property was cleaned up, at least partially, after the appraisal (as reflected in the second hearing); we leave it to the Bankruptcy Court on remand to determine whether to define the amount of partial lien avoidance by (1) a set dollar figure based on the 2007 appraisal, or (2) a formula, *i.e.*, the amount of Hugh and Lynn's lien minus the remainder after Andrew's exemption and fees (Sheriff's sale and attorney's fees previously awarded) are subtracted from the actual proceeds of the sale.  The Bankruptcy Court should further consider whether the amount of Hugh and Lynn's lien should reflect the statutory interest that they were awarded on their judgment.  Finally, the Bankruptcy Court should address on remand whether the order abandoning estate property should be

14

reconsidered and/or the trustee should be notified of potential additional assets in the estate to be administered following the sale of Andrew's property.

### Emergency Motion to Stay (doc. 13)

Andrew moved this Court to stay the Bankruptcy Court's Order of June 19, 2008 (Bkrtcy. doc. 56) that authorized the Monroe County Sheriff to sell the subject property pending this appeal. The sale is currently scheduled for August 15, 2008. Because this Entry resolves the appeal before the sale, the motion for a stay is denied as moot. However, because the Bankruptcy Court's denial of Andrew's motion to avoid lien is reversed, with instructions for further proceedings on remand, the Bankruptcy Court should consider whether the Sheriff's sale should be stayed or whether the Court can accomplish the additional proceedings on remand before the sale. If a stay is in order, we leave it to the Bankruptcy Court to determine whether, in light of Andrew's prevailing on this appeal, his financial situation, and the security of Hugh and Lynn's lien, a bond should again be required from him.

### Conclusion

Appellant's appeal (doc. 1) is **GRANTED** and the Bankruptcy Court's Order of June 25, 2007 (Bkrtcy. doc. 36) is **REVERSED**. The matter is remanded with instructions for further proceedings consistent with this Entry. The Emergency Motion for a Stay of Bankruptcy Court's Authorization of Sale at Sheriff's Sale (doc. 13) is **DENIED AS MOOT**.

**SO ORDERED**   07/31/2008

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

15

Distribution:

Terry Lee English
terryenglish2131@sbcglobal.net

Joseph A. Ross
rossfiling@rosslawoffice.com